No. 10-5245

**ORAL ARGUMENT SCHEDULED FOR APRIL 5, 2011**

IN THE

# United States Court of Appeals
# for the District of Columbia Circuit

AMERICAN NATIONAL INSURANCE COMPANY, ET AL.,
*Plaintiffs-Appellants*,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, ET AL.,
*Defendants-Appellees.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————

**BRIEF OF DEFENDANTS-APPELLEES JPMORGAN CHASE & CO. AND
JPMORGAN CHASE BANK, NATIONAL ASSOCIATION**

———————

Bruce E. Clark (clarkb@sullcrom.com)
Stacey R. Friedman (friedmans@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000

*Counsel for Defendants-Appellees JPMorgan Chase & Co. and
JPMorgan Chase Bank, National Association*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Circuit Rule 26.1, JPMorgan Chase & Co. states that it has no parent company, and no publicly held company has a 10% or greater ownership interest in it.  JPMorgan Chase & Co. is a global financial services firm whose business includes investment banking, financial services for consumers, small business and commercial banking, financial transaction processing, asset management, and private equity.

Pursuant to Circuit Rule 26.1, JPMorgan Chase Bank, National Association states that its parent company is JPMorgan Chase & Co., which is also the only publicly held company that has a 10% or greater ownership interest in it. JPMorgan Chase Bank, National Association is a national banking association.

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

**Parties and Amici**:  All parties, intervenors, and amici appearing before the District Court and in this Court are listed in Brief for Appellants, except for the following:  American National General Insurance Company, Pacific Property and Casualty Company, American National Lloyds Insurance Company, and Garden State Life Insurance Company.  These entities were Plaintiffs in the District Court, but are not Appellants in this Court because they dismissed their claims with prejudice.

**Rulings Under Review**:  Appellants appeal two rulings by the Honorable Rosemary M. Collyer:

- The April 13, 2010 Memorandum Opinion and Order in *American National Insurance Co., et al.* v. *FDIC, et al.*, No. 09-cv-1743 (D.D.C.), granting the Defendants' motions to dismiss and denying the Plaintiffs' motion to dismiss the Federal Deposit Insurance Corporation as a party and to remand the case to Texas state court.  (JA-323–JA-329; JA-330.)  The memorandum opinion is reported at 705 F. Supp. 2d 17.

- The July 19, 2010 Order in the same case denying the Plaintiffs' motion to alter or amend judgment and request for leave to file an amended complaint.  (JA-362–JA-363.)  This order is unpublished.

**Related Cases**:  This case has been before the United States District Court for the District of Columbia in the action captioned *American National Insurance Co., et al.* v. *FDIC, et al.*, No. 09-cv-1743.  Three related cases within the meaning of Circuit Rule 28(a)(1)(c) are pending before the United States District Court for the District of Columbia:

- *Washington Mutual, Inc.* v. *FDIC*, No. 09-cv-533 (RMC).

- *Deutsche Bank National Trust Co.* v. *FDIC*, No. 09-cv-1656 (RMC).

- *North Carolina Department of Revenue* v. *FDIC*, No. 10-cv-505 (RMC).

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ..................................................................................vi

GLOSSARY.......................................................................................................... xiii

PRELIMINARY STATEMENT ..............................................................................1

STATEMENT OF JURISDICTION........................................................................5

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................................5

PERTINENT STATUTES .......................................................................................6

STATEMENT OF THE CASE.................................................................................7

STATEMENT OF FACTS .....................................................................................10

SUMMARY OF ARGUMENT ..............................................................................13

STANDARD OF REVIEW ....................................................................................14

ARGUMENT ..........................................................................................................14

I.      THE DISTRICT COURT PROPERLY HELD THAT FIRREA'S
        JURISDICTIONAL BAR REQUIRED DISMISSAL OF THIS
        ACTION. ......................................................................................................14

        A.      FIRREA Requires That Claims Relating to Any Act or
                Omission of the FDIC as Receiver Must Be Exhausted through
                FIRREA's Claims Process. ...............................................................14

        B.      The District Court Correctly Held that FIRREA Applies to
                ANICO's Claims. ..............................................................................17

                1.      The District Court Applied the Plain Language of
                        FIRREA to ANICO's Claims. ................................................17

                2.      The District Court Followed Established Precedent,
                        Including From Three Courts of Appeals.............................21

        C.      ANICO's Efforts to Avoid FIRREA's Jurisdictional Bar Have
                No Basis. ...........................................................................................25

                1.      *Auction Company*, *Freeman* and a Balanced Reading
                        of FIRREA Support Affirmance. ...........................................26

                2.      ANICO Failed to Comply With FIRREA's
                        Exhaustion Requirement........................................................32

-iv-

# TABLE OF CONTENTS
## (continued)

*Page*

3.    ANICO Cannot Avoid FIRREA By Blaming the FDIC. ............................................................................34

4.    No Due Process Issues Exist. .........................................36

II.    ANICO'S "STANDING" ARGUMENTS ARE IRRELEVANT.................37

    A.    ANICO's Claims Fail for the Additional Reason that the FDIC Owns Its Claims. ..................................................37

    B.    The District Court Did Not Rule that ANICO Lacked Standing. ........41

III.    THE DISTRICT COURT PROPERLY DENIED PLAINTIFFS' MOTION TO ALTER OR AMEND THE JUDGMENT AND REQUEST FOR LEAVE TO AMEND. .......................................................44

    A.    ANICO's Motion to Alter or Amend Had No Merit. ........................44

    B.    ANICO's Rule 15(a) Request for Leave to Amend Was Properly Denied as Moot..................................................47

    C.    Even Under the Standards of Rule 15(a), ANICO's Request for Leave to Amend Would Have Been Futile. ........................................48

CONCLUSION .......................................................................51

# TABLE OF AUTHORITIES*

*Page(s)*

## CASES

*Aber-Shukofsky* v. *JPMorgan Chase & Co.*,
  No. 10-CV-226,
  2010 U.S. Dist. LEXIS 132726 (E.D.N.Y. Dec. 15, 2010) ..........................24–25

*Agrocomplect, AD* v. *Republic of Iraq*,
  262 F.R.D. 18 (D.D.C. 2009) .................................................................44

*Aljaf Assocs.* v. *FDIC*,
  879 F. Supp. 515 (E.D. Pa. 1995) ..........................................................33

*Am. First Fed., Inc.* v. *Lake Forest Park, Inc.*,
  198 F.3d 1259 (11th Cir. 1999) .............................................................21–22

*Am. Wildlands* v. *Kempthorne*,
  530 F.3d 991 (D.C. Cir. 2008) ..............................................................42

*Anderson* v. *FDIC*,
  No. 08-cv-2306,
  2010 U.S. Dist. LEXIS 30569 (S.D. Cal. Mar. 30, 2010) ................................35

*Arends* v. *Eurobank & Trust Co.*,
  146 F.R.D. 42 (D.P.R. 1993) .................................................................43

* *Auction Co. of Am.* v. *FDIC*,
  141 F.3d 1198 (D.C. Cir. 1998) .............................................................27, 29

*Bank of N.Y.* v. *First Millennium*,
  607 F.3d 905 (2d Cir. 2010) .................................................................30–31

*Bank One, Tex., N.A.* v. *Elms*,
  764 F. Supp. 85 (N.D. Tex. 1991) ..........................................................31

---

\*     Authorities on which we chiefly rely are marked with asterisks.

*Benson* v. *JPMorgan Chase Bank, N.A.*,
    Nos. C-09-5272 & C-09-5560,
    2010 U.S. Dist. LEXIS 80962 (N.D. Cal. Aug. 10, 2010 ................................24

*Blackmon-Malloy* v. *U.S. Capitol Police Bd.*,
    575 F.3d 699 (D.C. Cir. 2009)..........................................................41

*Brady Dev. Co.* v. *RTC*,
    14 F.3d 998 (10th Cir. 1994) ...........................................................15

*Brazlin* v. *W. Sav. & Loan Ass'n*,
    No. Civ. 91-0078,
    1994 U.S. Dist. LEXIS 21549 (D. Ariz. Jan. 26, 1994) ....................................40

*Bueford* v. *RTC*,
    991 F.2d 481 (8th Cir. 1993) ...........................................................37

*Ciralsky* v. *CIA*,
    355 F.3d 661 (D.C. Cir. 2004)...........................................................14, 44, 48

*City of Harper Woods Employees' Ret. Sys.* v. *Olver*,
    589 F.3d 1292 (D.C. Cir. 2009)..........................................................47

*Courtney* v. *Halleran*,
    No. 02-C-6926,
    2004 U.S. Dist. LEXIS 18795 (N.D. Ill. Sept. 14, 2004),
    *aff'd in relevant part*, 485 F.3d 942 (7th Cir. 2007) ....................................39–40

*diSibio* v. *Mission Nat'l Bank*,
    127 F. App'x 950 (9th Cir. 2005) ......................................................21

*Downriver Cmty. Fed. Credit Union* v. *Penn Square Bank*,
    879 F.2d 754 (10th Cir. 1989) ..........................................................39

*FDIC* v. *McFarland*,
     243 F.3d 876 (5th Cir. 2001) ..........................................................31

*FDIC* v. *Shain, Schaffer & Rafanello*,
    944 F.2d 129 (3d Cir. 1991) ...........................................................15

*Firestone* v. *Firestone*,
    76 F.3d 1205 (D.C. Cir. 1996).........................................................46–47

*First Gibraltar Bank, FSB* v. *Bradley*,
  98 F.3d 1338, 1996 WL 556852 (5th Cir. 1996) ................................................43

*Fox* v. *Am. Airlines, Inc.*,
  389 F.3d 1291 (D.C. Cir. 2004) ........................................................................44

*Franklin Sav. Ass'n* v. *OTS*,
  130 F.R.D. 460 (D. Kan. 1990) .........................................................................43

\* *Freeman* v. *FDIC*,
  56 F.3d 1394 (D.C. Cir. 1995) ....................................... 14–16, 21, 28–39, 34–37

*Fulani* v. *Brady*,
  935 F.2d 1324 (D.C. Cir. 1991) ........................................................................42

*Fund for Animals, Inc.* v. *Norton*,
  322 F.3d 728 (D.C. Cir. 2003) ..........................................................................43

*Greenfield* v. *Shuck*,
  867 F. Supp. 62 (D. Mass. 1994) ................................................................40–41

*Hamid* v. *Price Waterhouse*,
  51 F.3d 1411 (9th Cir. 1995) ............................................................................39

*Heaton* v. *Monogram Credit Card Bank of Ga.*,
  297 F.3d 416 (5th Cir. 2002) ............................................................................43

*Henrichs* v. *Valley View Dev.*,
  474 F.3d 609 (9th Cir. 2007) ............................................................................31

*Hickey* v. *NCNB Tex. Nat'l Bank*,
  763 F. Supp. 896 (N.D. Tex. 1991) ...................................................................31

*Home Capital Collateral, Inc.* v. *FDIC*,
  96 F.3d 760 (5th Cir. 1996) ..............................................................................29

*Homeland Stores, Inc.* v. *RTC*,
  17 F.3d 1269 (10th Cir. 1994) ..........................................................................29

*Hoxeng* v. *Topeka Broadcomm, Inc.*,
  911 F. Supp. 1323 (D. Kan. 1996) ....................................................................30

*Hudson United Bank* v. *Chase Manhattan Bank of Conn., N.A.*,
    43 F.3d 843 (3d Cir. 1994) .............................................................29, 31

*McCarthy* v. *FDIC*,
    348 F.3d 1075 (9th Cir. 2003) .........................................................29

*McGlothlin* v. *RTC*,
    913 F. Supp. 15 (D.D.C. 1996),
    *aff'd*, 111 F.3d 963 (D.C. Cir. 1997) ................................................33

*Messina* v. *Krakower*,
    439 F.3d 755 (D.C. Cir. 2006)..........................................................45

*Morales* v. *Trans World Airlines, Inc.*,
    504 U.S. 374 (1992)..........................................................................20

*Munsell* v. *Dep't of Agric.*,
    509 F.3d 572 (D.C. Cir. 2007)..........................................................14

*Nat'l Wrestling Coaches Ass'n* v. *Dep't of Educ.*,
    366 F.3d 930 (D.C. Cir. 2004)....................................................48, 51

*NSTAR Elec. & Gas Corp.* v. *FERC*,
    481 F.3d 794 (D.C. Cir. 2007)..........................................................42

*O'Melveny & Myers* v. *FDIC*,
    512 U.S. 79 (1994)............................................................................39

*Office & Prof'l Employees Int'l Union, Local 2* v. *FDIC*,
    962 F.2d 63 (D.C. Cir. 1992) ...........................................................21

*Pareto* v. *FDIC*,
    139 F.3d 696 (9th Cir. 1998) ...........................................................39

*Pernie Bailey Drilling Co.* v. *FDIC*,
    905 F.2d 78 (5th Cir. 1990) .............................................................43

*Pharm. Care Mgmt. Ass'n* v. *District of Columbia*,
    613 F.3d 179 (D.C. Cir. 2010)..........................................................38

*Ravenswood, LLC* v. *FDIC*,
   No. 10-cv-01064,
   2010 U.S. Dist. LEXIS 124248 (N.D. Ill. Nov. 23, 2010) ................................33

*Rosa* v. *RTC*,
   938 F.2d 383 (3d Cir. 1991) .......................................................................31, 36

*Rundgren* v. *Wash. Mut. Bank, F.A.*,
   No. 09-00495,
   2010 U.S. Dist. LEXIS 126803 (D. Haw. Nov. 30, 2010) ................................25

*In re Shirk*,
   437 B.R. 592 (Bankr. S.D. Ohio 2010) ............................................................34

*Simon* v. *E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976).........................................................................................42

*Simon* v. *FDIC*,
   48 F.3d 53 (1st Cir. 1995).................................................................................29

*Stamm* v. *Paul*,
   121 F.3d 635 (11th Cir. 1997) .........................................................................29

*Team Bank* v. *Barfield*,
   145 F.R.D. 69 (N.D. Tex. 1992) .......................................................................31

*United States ex rel. RTC* v. *Schroeder*,
   86 F.3d 114 (8th Cir. 1996) ........................................................................38–39

*United States ex rel. Williams* v. *Martin-Baker Aircraft Co.*,
   389 F.3d 1251 (D.C. Cir. 2004).......................................................................47

* *Vill. of Oakwood* v. *State Bank & Trust Co.*,
   539 F.3d 373 (6th Cir. 2008) ..............................................................21, 23, 29

* *Vill. of Oakwood* v. *State Bank & Trust Co.*,
   519 F. Supp. 2d 730 (N.D. Ohio 2007)
    *aff'd*, 539 F.3d 373 (6th Cir. 2008).......................................................15, 22–23

*Walker* v. *FDIC*,
   No. 08-6037,
   2009 U.S. Dist. LEXIS 121076 (D.N.J. Dec. 29, 2009)....................................35

*In re Wash. Bancorp.*,
   No. 95-1340,
   1996 U.S. Dist. LEXIS 3876 (D.D.C. Mar. 19, 1996) ......................................20

## STATUTES, RULES AND OTHER AUTHORITIES

12 U.S.C. § 1291 ......................................................................................5

12 U.S.C. § 1819(b)(2)(A) ................................................................5, 7

12 U.S.C. § 1821(c)(2) ........................................................................43

12 U.S.C. § 1821(d) ............................................................................15

* 12 U.S.C. § 1821(d)(2)(A)(i) ..........................................................38

12 U.S.C. § 1821(d)(2)(G) ..................................................................43

12 U.S.C. §§ 1821(d)(3)–(11) .............................................................15

12 U.S.C. § 1821(d)(5)(C) ..................................................................35

* 12 U.S.C. § 1821(d)(6)(A) ...........................................................7, 16

* 12 U.S.C. § 1821(d)(6)(B)(ii) ..........................................................16

* 12 U.S.C. § 1821(d)(13)(D) ....................................................5, 13, 15

12 U.S.C. § 1821(d)(13)(D)(i) ............................................................25

* 12 U.S.C. § 1821(d)(13)(D)(ii) ....................................2, 3, 9, 17, 21

12 U.S.C. § 1823(c)(11) ......................................................................50

28 U.S.C. § 1331 ..................................................................................5

Fed. R. Civ. P. 24(b)(2) ................................................................43–44

Emergency Economic Stabilization Act of 2008,
   Pub. L. No. 110-343, 122 Stat. 3765 (2008) ................................50

* Financial Institutions Reform, Recovery, and Enforcement Act of 1989,
   Pub. L. No. 101-73, 103 Stat. 183 (1989) ......................................2

H.R. Rep. No. 101-54(I) (1989),
   *reprinted in* 1989 U.S.C.C.A.N. 86 ...................................................................3

# GLOSSARY

| | |
|---|---|
| "ANICO" | The American National Insurance Company enterprises who are Appellants in this Court on behalf of their interest in bonds issued by Washington Mutual Bank |
| "App. Br." | Brief for Appellants |
| "District Court" | United States District Court for the District of Columbia |
| "FDIC" | Federal Deposit Insurance Corporation |
| "FIRREA" | Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (1989) |
| "JPMC Bank" | JPMorgan Chase Bank, N.A. |
| "JPMC & Co." | JPMorgan Chase & Co. |
| "JPMC" | JPMorgan Chase Bank, N.A. and JPMorgan Chase & Co., collectively |
| "OTS" | Office of Thrift Supervision |
| "P&A Agreement" | Purchase and Assumption Agreement |
| "WMI" | Washington Mutual, Inc. |
| "WMB" | Washington Mutual Bank |

## PRELIMINARY STATEMENT

Appellants are five American National Insurance Company

enterprises ("ANICO") that allegedly invested in the debt of Washington Mutual

Bank ("WMB").[1]  On September 25, 2008, WMB became the largest bank to fail

in United States history, the bank was closed, and the Federal Deposit Insurance

Corporation ("FDIC") was appointed as its receiver.  On that same day, the FDIC

sold all of the assets and certain liabilities of WMB to JPMorgan Chase Bank, N.A.

("JPMC Bank," and collectively with JPMorgan Chase & Co. ("JPMC & Co."),

"JPMC").  JPMC Bank, however, did not acquire the WMB bonds, which "are

subject to liquidation as part of the FDIC receivership [and] . . . are worthless."

(JA-054 (Compl. ¶ 71).)  Disappointed in this result, ANICO brought this lawsuit

against JPMC.

The "gravamen of Plaintiffs' Complaint" is that the FDIC receiver's

sale to JPMC Bank "'interfere[d] with' their 'rights under the bond contracts' by

'strip[ping] away the source of revenue from which' Washington Mutual Bank"

would have met its "obligations under the bond contracts."  (JA-327 (quoting

---

[1]    Plaintiffs dismissed with prejudice their claims on behalf of their investment in the stock and debt of the holding company, Washington Mutual, Inc. ("WMI"). (JA-249–JA-251 (Mar. 9, 2010 Hearing Tr.).)  Accordingly, Appellants' claims are solely on behalf of the ANICO companies' interest in bonds issued by WMB prior to its seizure.  (App. Br. at 4 n.2.)

Compl. ¶¶ 90, 92) (alterations in District Court's opinion).)  The claims against

JPMC all "depend on harm [allegedly] caused by the FDIC-Receiver when it 'sold

the crown jewels' of Washington Mutual Bank to JPMorgan Chase for a 'fire sale

price.'"  (JA-327 (quoting Compl. ¶ 21).)  As a result, the United States District

Court for the District of Columbia ("the District Court") found that this action fell

within the reach of the Financial Institutions Reform, Recovery, and Enforcement

Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (1989) ("FIRREA"), which

governs claims relating to the acts of the FDIC as receiver.  That statute requires

that "*any claim relating* to any act or omission" of the FDIC as receiver for a failed

bank be administratively exhausted through FIRREA's claims process or else no

court has jurisdiction to hear such claim.  12 U.S.C. § 1821(d)(13)(D)(ii)

(emphasis added).  Because ANICO did not comply with the mandatory FIRREA

processes, the District Court properly held that the case must be dismissed for lack

of jurisdiction.  Following dismissal with prejudice, the District Court also

properly denied Plaintiffs' motion to vacate final judgment and request for leave to

amend the Complaint.  Consideration of the three points raised by ANICO on

appeal establish that the District Court's decision should be affirmed.

   **Point I**:  ANICO argues that FIRREA can never apply to claims

brought against third parties, such as JPMC.  This is wrong.  The District Court

properly held that Plaintiffs' decision to sue JPMC, and not the FDIC, did not

avoid FIRREA's application.  In FIRREA, Congress enacted a broad
administrative process barring "any claim relating to any act or omission of [the
failed] institution or the [FDIC] as receiver" that is not preserved as a claim
through the FDIC receivership process.  12 U.S.C. § 1821(d)(13)(D)(ii).  Here,
ANICO's claims directly challenge the central purpose of the receivership—
resolution of the failed bank by sale of its assets—by asserting that the receiver's
sale of WMB's assets to JPMC Bank was a conspiracy-driven "fire sale."  As three
other Courts of Appeals and numerous district courts have held, such claims are
covered by FIRREA, even when they are brought against only the third-party
assuming bank.  Indeed, this settled and sensible application of the statute achieves
FIRREA's important goals—resolution of failed financial institutions in an
efficient, less costly, and final manner.  *See* H.R. Rep. No. 101-54(I) (1989),
*reprinted in* 1989 U.S.C.C.A.N. 86.  It is also entirely consistent with this Court's
precedent in *Freeman* and *Auction Company*, as well as the limits of due process.

     **Point II**:  With no credible challenge to the application of FIRREA,
ANICO argues two standing issues that the lower court did not even decide.  *First*,
ANICO asserts that the FDIC does not own the claims at issue.  Because the
District Court properly dismissed the action on jurisdictional grounds without
reaching this issue, this is not a proper basis for appeal.  Nonetheless, because the
FDIC does own claims arising from generalized harm purportedly suffered by all

WMB bondholders resulting from WMB's seizure, including ANICO's claims, this provides a separate basis to affirm the lower court's ruling.  *Second*, ANICO insists that the District Court erred in dismissing this action for lack of "standing" because it misunderstood the FDIC receiver's role as anything more than "the last of a chain of events that was set in motion by JPMC."  (Brief for Appellants ("App. Br.") at 38.)  This argument is both irrelevant and wrong.  The District Court did not dismiss this action due to ANICO's lack of "standing."  In any event, the District Court was correct in concluding that the FDIC's independent decision to sell the assets of WMB to JPMC Bank is an intervening event that stands between ANICO and its claims.  This was the basis for the District Court's decision that the FDIC is a proper intervenor (indeed, a necessary party), which should also be affirmed.

　　　　　**Point III**:  The only remaining issue presented is whether, following the dismissal of this action with prejudice, the District Court abused its broad discretion by denying Plaintiffs' motion to alter or amend the final judgment and for leave to submit a proposed amended complaint.  Plaintiffs failed below to establish the extraordinary circumstances necessary under Rule 59(e) to vacate the District Court's final judgment, and cannot demonstrate that the District Court's decision was an abuse of its discretion.  As a result, the District Court correctly held that Plaintiffs' Rule 15(a) request for leave to amend was moot.  This ruling

should be affirmed because, even if the District Court had entertained Plaintiffs'

request for leave to amend, it would have concluded that the proposed amended

complaint was futile given that the repackaged claims remain predicated on the

FDIC's conduct as receiver and, therefore, jurisdictionally barred by FIRREA.

## STATEMENT OF JURISDICTION

The District Court had jurisdiction—subject to the jurisdictional bar

of 12 U.S.C. § 1821(d)(13)(D)—pursuant to 28 U.S.C. § 1331 because "[a]ll suits

of a civil nature . . . to which the [Federal Deposit Insurance Corporation], in any

capacity, is a party shall be deemed to arise under the laws of the United States."

12 U.S.C. § 1819(b)(2)(A).  This Court has appellate jurisdiction pursuant to 12

U.S.C. § 1291 because Appellants appeal the District Court's April 13, 2010 final

Order dismissing all claims with prejudice and closing the case, as well as the

District Court's July 19, 2010 Order denying Appellants' Rule 59(e) motion.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

I.    Did the District Court properly hold that Plaintiffs' claims are
      jurisdictionally barred for failure to exhaust the requirements of
      FIRREA, where Plaintiffs' claims relate to an act or omission of the
      FDIC as receiver for a failed bank?

II.   Did the District Court abuse its discretion when it held that Plaintiffs
      failed to establish the extraordinary circumstances required under
      Rule 59(e) to vacate the District Court's judgment, and for leave to
      file an amended complaint?

## PERTINENT STATUTES

**(2) General powers**

**(A) Successor to institution**

The Corporation shall, as conservator or receiver, and by operation of law, succeed to—

> **(i)** all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution; and

> **(ii)** title to the books, records, and assets of any previous conservator or other legal custodian of such institution.

12 U.S.C. § 1821(d)(2)(A).

**(6) Provision for agency review or judicial determination of claims**

**(A) In general**

Before the end of the 60-day period beginning on the earlier of—

> **(i)** the end of the period described in paragraph (5)(a)(i) with respect to any claim against a depository institution for which the Corporation is receiver; or

> **(ii)** the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i),

the claimant may request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7) or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).

12 U.S.C. § 1821(d)(6).

**(D) Limitation on judicial review**

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

> **(i)** any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

> **(ii)** any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D).

## STATEMENT OF THE CASE

Plaintiffs filed their Complaint in Galveston County, Texas on February 16, 2009.  (JA-033–JA-064.)  On March 25, 2009, the FDIC intervened as a defendant pursuant to the Texas Rules of Civil Procedure.  The FDIC and JPMC subsequently removed the action to the Southern District of Texas, pursuant to 12 U.S.C. § 1819(b)(2)(A).  The FDIC and JPMC thereafter moved to transfer this action to the D.C. District Court in accordance with FIRREA's venue provision, 12 U.S.C. § 1821(d)(6)(A), or to dismiss for improper venue.

On April 21, 2009, Plaintiffs moved to remand to Texas state court, claiming that the FDIC failed to meet the standards for intervention under Federal Rule of Civil Procedure 24 and that FIRREA does not apply to their claims.  On September 3, 2009, the Texas District Court denied Plaintiffs' motion to remand. (JA-198.)  On September 9, 2009, Plaintiffs moved for reconsideration of the

denial of their motion for remand or, in the alternative, certification for

interlocutory appeal pursuant to 28 U.S.C. § 1292(b), which the Texas District

Court denied on September 11, 2009.  (JA-204.)

Also, on September 11, 2009, the Texas District Court granted

JPMC's and the FDIC's motions to transfer the action to the District of Columbia.

(JA-199–JA-203.)  That court was the first to reject Plaintiffs' contention that

FIRREA did not apply to their claims against JPMC because "[i]n truth, the

plaintiffs' suit is related to the actions taken by the FDIC-Receiver when it sold

substantially all of the assets of WMB to JPMC Bank on September 25, 2008."

(JA-202.)  The court therefore concluded that "plaintiffs failed to bring their suit in

either of the permissible venues" under FIRREA.  (JA-203.)  Rather than dismiss

the action, the Texas District Court determined that Section 1406(a) of Title 28 and

"[t]he intent of justice dictates that this case be transferred to . . . the District of

Columbia."  (JA-203.)

After transfer to the District Court, on December 7, 2009:  (a)

Plaintiffs moved to dismiss the FDIC as a party and for remand, or in the

alternative, dismissal without prejudice for lack of subject matter jurisdiction; (b)

JPMC moved to dismiss Plaintiffs' claims based on their investments in WMI

stock and debt for lack of standing and all claims for failure to comply with

FIRREA's exhaustion requirement and failure to state a claim; and (c) the FDIC

moved to dismiss all claims for lack of subject matter jurisdiction and failure to state a claim.

On April 13, 2010, the District Court granted JPMC's and the FDIC's motions to dismiss with prejudice, denied Plaintiffs' motion, and ordered the case closed.  (JA-323–JA-329; JA-330.)  As the District Court explained, "Plaintiffs' claims against JPMorgan Chase depend on harm caused by the FDIC-Receiver when it 'sold the crown jewels' of Washington Mutual Bank to JPMorgan Chase for a 'fire sale price'" (JA-327 (quoting Compl. ¶ 21)) and therefore Plaintiffs' claims were jurisdictionally barred by FIRREA, which "applies to 'any claim relating to any act or omission' of the FDIC as receiver for a failed bank."  (JA-328–JA-329 (quoting 12 U.S.C. § 1821(d)(13)(D)(ii)).)

On May 10, 2010, Plaintiffs filed a Motion to Alter or Amend Judgment and Request for Leave to File Amended Complaint, in which they asked the District Court to reconsider and vacate its judgment under Rule 59(e), as well as to grant leave under Rule 15(a) to submit an amended complaint.  Attached to the motion was a proposed amended complaint, which was also predicated on the FDIC's conduct as receiver, including the FDIC's sale of WMB's assets to JPMC Bank and WMB's resulting default on its debt obligations.  (*See* JA-331–JA-361.) The District Court denied the motion on July 19, 2010, explaining that "[n]one of these conditions [that would support a Rule 59(e) motion] is met here," that "a

party must first hurdle this Rule 59(e) bar before amending a complaint, post-judgment," and therefore "[b]ecause Plaintiff has not done so, its motion to amend its complaint [under Rule 15(a)] will also be denied."  (JA-362–JA-363.)

ANICO appeals both of the District Court's orders.

## STATEMENT OF FACTS

Before it became the largest bank failure in U.S. history, WMB was the largest savings and loan association in the U.S., with over 2,200 branches, 43,000 employees, and $188 billion in deposits.  (JA-041 (Compl. ¶ 33).) However, throughout 2008, mounting concerns developed over the safety and soundness of WMB's banking operations.  By March 2008, Washington Mutual was in need of capital or an acquirer, so it began discussions with many entities, including JPMC, in an attempt to meet that need.  (JA-044 (Compl. ¶ 42).)  The bidders, including JPMC & Co., entered into confidentiality agreements with WMI.  (JA-061 (Compl. ¶ 95).)  Thereafter, JPMC offered to buy WMI, but WMI rejected that offer.  (JA-044 (Compl. ¶ 42).)

Washington Mutual did not survive as a standalone entity.  On September 25, 2008, the Office of Thrift Supervision ("OTS") declared WMB in an "unsafe and unsound condition," closing the bank and appointing the FDIC as receiver.  (*See* JA-052 (Compl. ¶ 64).)  The FDIC, after taking possession of WMB as receiver, sold substantially all of WMB's assets, and transferred certain WMB

liabilities, to JPMC Bank pursuant to a Purchase and Assumption Agreement (the "P&A Agreement").  (JA-052 (Compl. ¶ 67).)

Plaintiffs allege that the failure of Washington Mutual was the result of a covert scheme among JPMC, the FDIC, the OTS and other federal regulators to effect the premature seizure of WMB in order to sell WMB's assets to JPMC Bank for a fire sale price.  (*See* JA-038–JA-051 (Compl. ¶¶ 25–62).)  More specifically, Plaintiffs allege that after WMI rejected JPMC's offer to purchase Washington Mutual in April 2008, "JPMC began to exert pressure on the OTC [sic], FDIC and other regulators to intensify oversight and reporting requirements of Washington Mutual, with the end goal of closing Washington Mutual in a seamless transfer of the valuable, cherry-picked, assets, while leaving the liabilities, to JPMC."  (JA-044 (Compl. ¶ 43).)  "During late July and early September of 2008, [the alleged conspiracy continued as] the FDIC [likewise] exerted pressure upon the OTS to seize WMB."  (JA-046 (Compl. ¶ 48).)  At the same time, the FDIC "work[ed] extensively" with JPMC "to design bidding parameters [for WMB's assets] that would suit JPMC's needs, and which would rule out other potential bidders."  (JA-039 (Compl. ¶ 25).)  As part of the joint efforts, even "the requirements for a 'conforming bid' had been reached after extensive negotiations between the FDIC and JPMC."  (JA-051 (Compl. ¶ 62) (internal quotation in original).)

Then, "[o]n or about September 4, 2008 . . . JPMC and the FDIC

agreed to a plan whereby federal regulators would seize WMB and certain valuable

assets would be passed to JPMC, and certain liabilities excluded."  (JA-046

(Compl. ¶ 47).)  Although on September 23, 2008, "the FDIC purportedly sought

bids from select bidders, including JPMC, for the sale of WMB," Plaintiffs assert

this was mere window dressing because "an agreement had already been reached at

this time between the FDIC and JPMC for the seizure and the sale of WMB to

JPMC."  (JA-051 (Compl. ¶ 62).)  The alleged conspiracy was consummated

when:

> On September 25, 2008, after weeks of pressure by
> [JPMC] upon [the FDIC] and other federal regulators, the
> FDIC and the [OTS] agreed to [JPMC's] terms.  On that
> day, the OTS seized [WMB], passed the bank to the
> FDIC as receiver, and the FDIC sold the crown jewels of
> Washington Mutual to JPMC at a fire sale price.

(JA-037 (Compl. ¶ 21).)

ANICO was allegedly harmed—along with all other WMB

bondholders—because "JPMC did not acquire obligations to unsecured debt

holders such as the Plaintiffs" and therefore the "sale of WMB's valuable assets

. . . create[d] a default and totally prevent[ed] WMB from otherwise being able to

perform [its] obligations under the contracts."  (JA-052–JA-053, JA-056 (Compl.

¶¶ 67, 79).)  Rather than accept that the "WMB Bonds . . . are subject to liquidation

-12-

as part of the FDIC receivership [and] . . . are worthless" (JA-054 (Compl. ¶ 71)),

ANICO brought this lawsuit.  Plaintiffs specifically brought three causes of action

against JPMC:  (1) tortious interference with Plaintiffs' bond contracts (JA-058–

JA-060 (Compl. ¶¶ 88–93)); (2) breach of a confidentiality agreement between

JPMC & Co. and WMI (JA-061–JA-062 (Compl. ¶¶ 94–99)); and (3) unjust

enrichment based on the price paid by JPMC Bank under the P&A Agreement (JA-

062 (Compl. ¶¶ 100–03)).

## SUMMARY OF ARGUMENT

The District Court correctly held that ANICO's claims "relat[e] to

an[] act or omission of" the FDIC as WMB's receiver and thus fall squarely within

the jurisdictional bar of 12 U.S.C. § 1821(d)(13)(D), even though these claims

were brought only against JPMC, and not the FDIC.  (JA-329.)

The District Court also correctly held that ANICO failed to

demonstrate any basis under Rule 59(e) to support its motion to alter or amend the

District Court's final judgment.  This rendered moot Plaintiffs' request for leave to

amend under Rule 15(a)—a proposed amended complaint that was nonetheless

futile because it is *still* predicated on the FDIC's sale of WMB's assets to JPMC

Bank, and thus barred by FIRREA.

## STANDARD OF REVIEW

"This court reviews *de novo* the District Court's dismissal of a complaint for lack of subject matter jurisdiction."  *Munsell* v. *Dep't of Agric.*, 509 F.3d 572, 578 (D.C. Cir. 2007).  This Court "review[s] the district court's decisions [under Rules 59(e) and 15(a)] only to determine whether the court abused its discretion."  *Ciralsky* v. *CIA*, 355 F.3d 661, 668 (D.C. Cir. 2004).

## ARGUMENT

## I.     THE DISTRICT COURT PROPERLY HELD THAT FIRREA'S JURISDICTIONAL BAR REQUIRED DISMISSAL OF THIS ACTION.

The District Court correctly applied FIRREA's plain language and established precedent to hold that FIRREA applies to this action, which is a challenge to the FDIC's resolution of WMB through an asset sale to JPMC Bank. (Points I.A.–I.B.)  ANICO's arguments on appeal amount to misreading *Auction Company* and *Freeman*, unfounded assertions that it either complied with FIRREA or its failure to comply was the FDIC's fault, and due process complaints that have been uniformly rejected by this Court and others.  (Point I.C.)

### A.     FIRREA Requires That Claims Relating to Any Act or Omission of the FDIC as Receiver Must Be Exhausted through FIRREA's Claims Process.

Congress enacted FIRREA in 1989, in response to "the savings and loan insolvency crisis to enable the FDIC . . . to expeditiously wind up the affairs

of literally hundreds of failed financial institutions throughout the country."

*Freeman* v. *FDIC*, 56 F.3d 1394, 1398 (D.C. Cir. 1995) (citation omitted).

FIRREA created "broad revisions in federal banking law to enhance certain powers

of the FDIC and to eliminate impediments to the efficient resolution of failed

financial institutions." *FDIC* v. *Shain, Schaffer & Rafanello*, 944 F.2d 129, 131

(3d Cir. 1991). FIRREA thus sets out a "'detailed series of rules under which all

claims involving an insolvent institution are received and handled.'" *Vill. of*

*Oakwood* v. *State Bank & Trust Co.*, 519 F. Supp. 2d 730, 735 (N.D. Ohio 2007)

(quoting *Brady Dev. Co.* v. *RTC*, 14 F.3d 998, 1003 (10th Cir. 1994)), *aff'd*, 539

F.3d 373 (6th Cir. 2008).

Under FIRREA, Congress mandated that (1) "any claim or action for

payment from, or any action seeking a determination of rights with respect to [] the

assets of any depository institution for which the Corporation has been appointed

receiver" and (2) any "claim relating to any act or omission of [a failed bank]" or

"the [FDIC] as receiver," 12 U.S.C. § 1821(d)(13)(D)(i)–(ii), be submitted through

the administrative claims process described in 12 U.S.C. § 1821(d). Those claims

do not have to be paid by the FDIC; it can allow or disallow the claims. *See* 12

U.S.C. §§ 1821(d)(3)–(11). In the event of a disallowance, the claimant may opt to

have that decision administratively reviewed by the FDIC, or it may assert those

disallowed claims—and only those disallowed claims—in a *de novo* court action in

either the U.S. District Court for the District of Columbia or the district in which the failed bank's principal place of business is located.  *See* 12 U.S.C. § 1821(d)(6)(A).  However, if a potential claimant fails to follow these procedures within the prescribed time periods, the "claim shall be deemed to be disallowed (other than any portion of such claim which was allowed by the receiver) as of the end of such period, such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim."  12 U.S.C. § 1821(d)(6)(B)(ii).

Pursuant to this statutory regime, "Section 1821(d)(13)(D) . . . acts as a jurisdictional bar to claims or actions by parties who have not exhausted their § 1821(d) administrative remedies."  *Freeman*, 56 F.3d at 1400 ("This mandatory exhaustion requirement . . . has been vigilantly enforced by sister circuits.") (citing decisions from the Second, Third, Fourth, Fifth, Eighth and Ninth Circuits).  Thus, when a plaintiff asserts claims (a) seeking assets of a failed bank, or (b) seeking redress for the pre-receivership acts and omissions of the failed bank or of the FDIC as the failed bank's receiver, but fails timely to file a proof of claim, that plaintiff's claims are barred and no court has subject matter jurisdiction to hear such claims.

**B.    The District Court Correctly Held that FIRREA Applies to ANICO's Claims.**

The District Court determined that "Plaintiffs' claims against JPMorgan Chase directly 'relate' to an 'act' of the FDIC-Receiver:  the agency's 'fire sale' of Washington Mutual Bank's assets" to JPMC Bank.  (JA-329.)  The District Court therefore properly held that ANICO's claims fall squarely within FIRREA's jurisdictional bar, which precludes any court from exercising jurisdiction over "any claim relating to any act or omission of [a failed bank]" or "the [FDIC] as receiver."  12 U.S.C. § 1821(d)(13)(D)(ii).  This decision is entirely consistent with decisions from three other Courts of Appeals and numerous district courts.

**1.    The District Court Applied the Plain Language of FIRREA to ANICO's Claims.**

On appeal, ANICO argues that FIRREA could never apply to "claims asserted against private third parties by private parties . . . ."  (App. Br. at 1.)  ANICO then concludes that FIRREA should certainly not bar its claims because it has disavowed that its Complaint concerns the FDIC's conduct as WMB's receiver.  (*See*, *e.g.*, App. Br. at 15, 26.)  ANICO's arguments are not consistent with the words of the Complaint, its claims pleaded, or the plain language of the statute.

-17-

Here, the Complaint is replete with allegations directly relating to the FDIC's alleged conduct.  As described *supra*, at 9–11, the central premise of the Complaint is that the FDIC "sold the crown jewels of Washington Mutual to JPMC at a fire sale price"  (JA-037 (Compl. ¶ 21)), pursuant to "a plan whereby federal regulators would seize WMB and certain valuable assets would be passed to JPMC, and certain liabilities excluded" (JA-046 (Compl. ¶ 47)).  The Complaint alleges that the FDIC's P&A Agreement with JPMC Bank was a sham because not only had "an agreement . . . already been reached at this time between the FDIC and JPMC for the seizure and sale of WMB to JPMC" (JA-051 (Compl. ¶ 62)), but the FDIC and JPMC had previously "worked extensively . . . to design bidding parameters . . . which would rule out other potential bidders."  (JA-039 (Compl. ¶ 25).)

These allegations are a direct attack on the core purpose of the receivership, which ANICO admits is to "liquidat[e] or wind[] up the affairs of an insured Federal depository institution."  (App. Br. at 16.)  Indeed, "Plaintiffs' claims against JPMorgan Chase depend on harm caused by the FDIC-Receiver when it 'sold the crown jewels' of Washington Mutual Bank to JPMorgan Chase for a 'fire sale price.'"  (JA-327 (quoting Compl. ¶ 21).)  This bears out in the claims themselves:

**Tortious Interference**:  The tortious interference claim is premised on the allegation that "[a]s a proximate result of Defendants' actions, . . . WMB, through the FDIC as receiver for WMB, has failed and refused to meet its obligations under the bond contracts."  (JA-060 (Compl. ¶ 91).)  Put another way, the crux of the tortious interference claim is that JPMC Bank bought WMB's assets "at a below-market price under terms that would sever the Plaintiffs' contractual rights under the Bonds."  (JA-060 (Compl. ¶ 92).)  This claim openly seeks to recover for the harm ANICO suffered due to the FDIC receiver's actions, including the sale of WMB's assets but not its bond obligations to JPMC Bank at an alleged "fire sale price."  (JA-037 (Compl. ¶ 21).)

**Breach of Confidentiality Agreement**:  The Complaint also alleges that JPMC "violated the confidentiality agreement by, among other things, misusing confidential information of Washington Mutual to negotiate with and develop a bid to submit to the FDIC [and] communicating with the FDIC" in order to "hamper Washington Mutual's efforts to obtain a purchaser for itself . . . .  As a result, . . . the contractual rights underlying the Bonds are of no value."  (JA-061–JA-062 (Compl. ¶¶ 98–99); *see also* JA-054 (Compl. ¶ 71 ("WMB Bonds . . . are subject to liquidation as part of the FDIC receivership [and] . . . are worthless")).)  This is another variation on the receivership-injury theme.  ANICO asserts that the purported "breach [of the confidentiality agreement that] caused the

-19-

Plaintiffs injury by preventing Washington Mutual from obtaining a purchaser for itself," above the price the FDIC as receiver accepted from JPMC Bank for WMB's assets.  (JA-062 (Compl. ¶ 99).)

  **Unjust Enrichment**:  The unjust enrichment claim likewise asserts that JPMC was unjustly enriched because the FDIC sold WMB's assets to JPMC Bank for too low a price:  "JPMC received a benefit from its transaction with the FDIC whereby it obtained the valuable assets of WMB at a price less than its fair market value."  (JA-062 (Compl. ¶ 101).)  Such a claim unmistakably relates to the acts of the receiver.

  In light of these allegations, the District Court concluded that the Complaint puts forth claims that "relat[e] to any act or omission . . . of the [FDIC] as Receiver" and thus fall squarely within Section 1821(d)(13)(D) of FIRREA. (JA-329.)  This determination is consistent with the plain meaning of the statute and gives due consideration to the phrase "relating to," which has a deliberately broad and sweeping meaning when used by Congress in a statute.[2]  The District

---

[2]  "The ordinary meaning of ['relating to'] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer, . . . and the words thus express a broad pre-emptive purpose.'"  *Morales* v. *Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992); *see also In re Wash. Bancorp.*, No. 95-1340, 1996 U.S. Dist. LEXIS 3876, at *16 (D.D.C. Mar. 19, 1996) (explaining that Section 1821(d)(13)(D)(ii) uses "very broad language," which "is not limited to claims against assets of the failed depository. . . [which] applies to claims arising from the actions of the depository institution or the FDIC itself while acting as receiver").

Court thus properly held that "Plaintiffs were required to pursue their claims against the FDIC-Receiver administratively through the exclusive receivership claims process that Congress provided in [FIRREA]," and dismissed this action due to ANICO's failure to do so.  (JA-328); *see also* 12 U.S.C. § 1821(d)(13)(D)(ii); *Freeman*, 56 F.3d at 1400; *Office & Prof'l Employees Int'l Union, Local 2* v. *FDIC*, 962 F.2d 63, 66 n.7 (D.C. Cir. 1992) (Ginsburg, J.).

### 2.    The District Court Followed Established Precedent, Including From Three Courts of Appeals.

ANICO's theory that FIRREA can never apply when claims are "asserted against third parties as the result of the third parties' [alleged] wrongdoing" (App. Br. at 16) has been rejected by three different Courts of Appeals and should be rejected here.  *See Vill. of Oakwood* v. *State Bank & Trust Co.*, 539 F.3d 373, 386 (6th Cir. 2008) (holding that claims against the purchaser of failed bank assets from the FDIC were barred by 12 U.S.C. § 1821(d)(13)(D)(ii) as "directly related to acts or omissions of the FDIC as the receiver of [the failed bank]"); *diSibio* v. *Mission Nat'l Bank*, 127 F. App'x 950, 951 (9th Cir. 2005) (Westlaw version) (unpublished) ("The district court properly dismissed [plaintiffs'] claims against [the purchasing bank] that were based on [the failed bank's] actions; those claims are defaulted because they had to be raised before the [receiver] before the [plaintiffs] could proceed to federal [district] court."); *Am.*

-21-

*First Fed., Inc.* v. *Lake Forest Park, Inc.*, 198 F.3d 1259, 1263 n.3 (11th Cir. 1999) ("AFF, having purchased the note from the RTC, stands in the shoes of the RTC and acquires its protected status under FIRREA. Thus, if Lake Forest is barred [by Section 1821(d)] from asserting this claim against the RTC, it is similarly barred from asserting it against AFF."). These courts, like the District Court below, held that FIRREA's claims process cannot be avoided by simply attacking the third party who purchases assets from the receiver.

For example, in *Village of Oakwood*, uninsured depositors sued only the bank that acquired assets from the FDIC under a purchase and assumption agreement for, *inter alia*, "aiding and abetting the FDIC's alleged breach of fiduciary duty to the uninsured depositors . . . ." 519 F. Supp. 2d 730, 732–33 (N.D. Ohio 2007). The plaintiffs alleged that, as a result of "the FDIC's [purchase and assumption] transaction with State Street," plaintiffs "were worse off than if those dealings had never occurred." *Id*. at 733. Yet, the uninsured depositors contended that, because they were not suing the FDIC, FIRREA did not apply to this "aiding and abetting" claim. *Id*. at 738 (citation omitted). The court disagreed, explaining that "[w]hen the receiver took the actions that underlie the uninsured depositors claims—claims that are clearly relate[d] to an 'act or omission of . . . the Corporation as receiver,'" they were covered by FIRREA, even though brought against a third party. *Id*. As a result, because plaintiffs had not

exhausted the administrative process set forth in FIRREA, "the claimants have no

further rights (and thus no right to a hearing in this court) with regard to the

claims." *Id*.

　　　　The Sixth Circuit's affirmance of *Village of Oakwood* reached the

same conclusion.  The Court explained that the fact that "the Uninsured Depositors

have sued only State Bank, rather than the FDIC" did not save their claims from

jurisdictional bar because:

> The problem with this novel argument is that all of their
> claims against State Bank are directly related to acts or
> omissions of the FDIC as the receiver of Oakwood.  As
> the district court explained, accepting the Uninsured
> Depositors argument and 'permit[ting] claimants to avoid
> [the] provisions of (d)(6) and (d)(13) by bringing claims
> against the assuming bank . . . would encourage the very
> litigation that FIRREA aimed to avoid.'

539 F.3d at 386.[3]

---

[3]　　　ANICO attempts to distinguish these decisions by asserting that (a) unlike in
*Village of Oakwood*, "Appellants do not allege that JPMC 'aid[ed] and
abet[ted]'any breach of duty by the FDIC or that the FDIC was a wrongdoer in any
capacity;" and (b) "here, unlike *diSibio* and the other cases cited by JPMC, the
claims of the Appellants are not based on allegations of actionable wrongdoing by
the failed bank (here, WMB) or the FDIC-Receiver."  (App. Br. at 26 & 24 n.36.)
Despite Appellants' protestations, the Complaint indeed relies on an alleged
conspiracy between JPMC and the FDIC, including the FDIC going through the
machinations of a sham bidding process, after already deciding to sell WMB's
assets to JPMC Bank at a fire sale price.  (*See*, *e.g*., JA-037, JA-038, JA-046, JA-
051 (Compl. ¶¶ 21, 25, 47, 62).)  For this reason, the District Court properly
concluded that the decision not to name the FDIC as a defendant did not save
Plaintiffs' claims from dismissal.

Several other recent cases have similarly applied FIRREA's jurisdictional bar—covering "any claim relating to an act or omission of the [failed bank] or the [FDIC] as receiver"—to require dismissal of actions brought against JPMC relating to WMB's alleged pre-receivership misconduct, even though the plaintiff sued only JPMC.  For example, in *Benson* v. *JPMorgan Chase Bank, N.A.*, "the allegations in Plaintiffs' Complaints relate[d] to WaMu and Chase's alleged involvement in [a] Ponzi scheme."  Nos. C-09-5272 & C-09-5560, 2010 U.S. Dist. LEXIS 80962, at *11 (N.D. Cal. Aug. 10, 2010).  The court dismissed the action with prejudice because "even if the Court were to find that the Complaints include stand-alone allegations of post-receivership misconduct by Chase, FIRREA still applies" because "courts have not allowed a litigant to avoid FIRREA administrative requirements by adding allegations of misconduct by an assuming bank to complaints predicated on the conduct of the FDIC or the failed bank."  *Id.* at *13–14 (citing cases).  Similarly, in *Aber-Shukofsky* v. *JPMorgan Chase & Co.*, the court dismissed a class action against JPMC for WMB's alleged violations of the Fair Labor Standards Act and related state laws because, "given the plain language of FIRREA, the Court finds that plaintiffs cannot evade FIRREA's mandatory exhaustion requirement simply by asserting claims against defendants, as third-party purchasers of the failed bank's assets, for acts or omissions that relate to WaMu."  No. 10-CV-226, 2010 U.S. Dist. LEXIS 132726,

at *12 (E.D.N.Y. Dec. 15, 2010); *see also Rundgren* v. *Wash. Mut. Bank, F.A.*, No. 09-00495, 2010 U.S. Dist. LEXIS 126803, at *11–13 (D. Haw. Nov. 30, 2010).

The same analysis applies here where the claims are centered on the theory that JPMC should be liable because, in winding down the failed bank, the FDIC as receiver sold assets at a "fire sale price."  (JA-037 (Compl. ¶ 21).)  Such claims relate to the FDIC's conduct as receiver.  The District Court therefore properly held that "Plaintiffs' claims are barred" because ANICO "cannot circumvent the Act's jurisdictional bar by aiming their claims at the assuming bank of the failed bank's assets."  (JA-329 (citations to *Freeman* and *Village of Oakwood* omitted).)[4]

## C.    ANICO's Efforts to Avoid FIRREA's Jurisdictional Bar Have No Basis.

With no credible explanation as to why the jurisdictional bar does not apply to its claims, ANICO offers four arguments in an effort to persuade this Court to overlook that provision of FIRREA.  ANICO contends that:  (a) its appeal

---

[4]     As discussed in the Brief of Defendant-Appellee FDIC-Receiver, ANICO's claims separately fall within the first prong of FIRREA's jurisdictional bar because the Complaint alleges, *inter alia*, that the assets of WMB should have remained available to satisfy WMB's bond obligations, but were purportedly "strip[ped] away [by JPMC] . . .without properly compensating . . . Plaintiffs."  (JA-040 (Compl. ¶ 30).)  This provides a separate basis to affirm the dismissal of this action because ANICO is thus asserting claims seeking a "payment from" or "a determination of rights with respect to[] the assets of" WMB and therefore this action falls within the scope of FIRREA.  12 U.S.C. § 1821(d)(13)(D)(i).

is supported by *Auction Company*, *Freeman* and cases that range from completely irrelevant to supportive of the District Court's application of FIRREA; (b) it did comply with FIRREA's claims process (even though it did not); (c) to the extent it did not comply with FIRREA, it must have been the FDIC's fault; and (d) in the event all these arguments fail, there must be some due process violation afoot. (*See* App. Br. at 15–27.)  None of these arguments has merit.

### 1.  *Auction Company*, *Freeman* and a Balanced Reading of FIRREA Support Affirmance.

ANICO's arguments regarding the scope of FIRREA turn on a misreading of this Court's holdings in *Auction Company* and *Freeman* as well as the holdings of other courts.  ANICO asserts that *Auction Company* and *Freeman* stand for the proposition that "[c]laims against *third parties* based on their *own* wrongdoing are not susceptible to administration by a[n] FDIC receivership under FIRREA."  (App. Br. at 20 (emphasis in original).)  On the contrary, although the holdings in *Auction Company* and *Freeman* did not directly address this issue, they support adherence to the holdings of the Sixth, Ninth and Eleventh Circuits that FIRREA's jurisdictional bar applies where claims relate to the acts of the FDIC as receiver, even if brought against a third party, and that such claims can (and should) be subject to the administrative process or be jurisdictionally barred.

-26-

To begin, *Auction Company* does not stand for the proposition that "a claim against the FDIC in its corporate capacity—*or by extension any claim against any third party*—would not be subject to FIRREA." (App. Br. at 18 (emphasis added).) This Court did not hold and had no opportunity to address whether FIRREA's jurisdictional bar applied to claims asserted against an assuming bank (or against other third parties). Rather, *Auction Company* held that FIRREA did not apply to a generic breach of contract claim against the FDIC asserted by a company hired to auction assets of several unspecified failed institutions and institutions that might fail in the future. The case turned on whether FIRREA applied to claims against the FDIC as receiver (or future receiver) for many unspecified institutions. In deciding that it did not, this Court interpreted the phrase "'claim relating to an act or omission of . . . the Corporation as receiver' to mean 'claim relating to an act or omission of . . . the Corporation as receiver *for such institution*.'" *See Auction Co. of Am.* v. *FDIC*, 141 F.3d 1198, 1200–01 (D.C. Cir. 1998) (emphasis in original). Because "the FDIC did not act as receiver for any particular depository," the Court held that the breach of contract claims against the FDIC fell outside the scope of Section 1821(d)(13)(D). *Id*. at 1201. The holding in *Auction Company* does not speak to the situation here, where the FDIC's sale of WMB's assets to JPMC Bank was as receiver for a particular depository institution, WMB.

ANICO is equally wrong in its assertions about this Court's holding in *Freeman* and how FIRREA's claims process in subsection (d)(6)(A) works in accord with the jurisdictional bar in subsection (d)(13)(D). At base, ANICO asserts FIRREA never applies to claims (App. Br. at 17–20), unless such claims are "against a depository institution for which the Corporation is receiver." 12 U.S.C. § 1821(d)(6)(A). This Court has already held otherwise. In *Freeman*, this Court considered claims brought solely against the FDIC. The claims were not "claim[s] against a depository institution" and, therefore, not explicitly covered by ANICO's limited interpretation of subsection (d)(6) and FIRREA. The claims did, however, "seek a determination of rights with respect to an asset of a failed bank for which the FDIC serves as receiver," and, therefore, were plainly within the scope of the jurisdictional bar set out in subsection (d)(13)(D). *Freeman*, 56 F.3d at 1400. If ANICO's rule had been applied, FIRREA would not have applied in *Freeman*, which would have made FIRREA's jurisdictional bar meaningless. It is thus no surprise that the *Freeman* decision held that FIRREA's jurisdictional bar did apply. *Id.* at 1402. In reaching this conclusion, this Court recognized that its ruling was not only consistent with "[o]ur sister circuits [which] have broadly applied the § 1821(d) jurisdictional bar to all manner of 'claims,'" but also that such an approach was consistent with "Congress' core purpose of enacting

FIRREA, which was . . . to expeditiously wind up the affairs of failed banks." *Id*.
at 1401 (citations omitted).

Although *Auction Company* explained that this Court has not yet
"define[d] fully the concept of 'claims' as it appears in subsections (d)(13)(D) and
(d)(6) of 12 U.S.C. § 1821," 141 F.3d at 1200, the result in *Freeman* accords with
a majority of circuits.[5]  Those courts interpret FIRREA and these two provisions
"harmonious[ly]," by "read[ing] (d)(6)(A) broadly" to expand the breadth of
(d)(6)(A) to cover the same claims as subsection (d)(13)(D), *Auction Co.*, 141 F.3d
at 1200–01, *i.e.*, "that the administrative claims procedures and the jurisdictional
bar have concurrent scope." *Hudson United Bank* v. *Chase Manhattan Bank of
Conn., N.A.*, 43 F.3d 843, 849–50 (3d Cir. 1994).  Such a result is certainly merited
in this case.  A balanced reading of FIRREA and its purposes leads to the
conclusion that "claims" at the very least includes causes of action that directly
challenge an assuming bank's participation in an FDIC receivership asset sale,

---

[5]    Six of seven circuits to address the interplay between these provisions have
held that FIRREA's exhaustion requirement and resulting jurisdictional bar applied
to claims that fell within the broad language of subsection 1821(d)(13)(D) even if
outside the narrower scope of subsection 1821(d)(6)(A).  *See Village of Oakwood*,
539 F.3d at 385–86; *McCarthy* v. *FDIC*, 348 F.3d 1075, 1077 (9th Cir. 2003);
*Stamm* v. *Paul*, 121 F.3d 635, 642 (11th Cir. 1997); *Home Capital Collateral, Inc.*
v. *FDIC*, 96 F.3d 760, 763–64 (5th Cir. 1996); *Simon* v. *FDIC*, 48 F.3d 53, 58 (1st
Cir. 1995); *Hudson United Bank* v. *Chase Manhattan Bank of Conn.*, 43 F.3d 843,
848–50 (3d Cir. 1994).  *But see Homeland Stores, Inc.* v. *RTC*, 17 F.3d 1269 (10th
Cir. 1994).

even when such claims are brought only against the assuming bank.  Considering

that the FDIC nearly always resolves a failed bank by selling the institution's

assets to a third party, it cannot be that FIRREA is evaded by the motivated

plaintiff who deftly challenges that transaction by suing the assuming bank.

FIRREA was intended to funnel conspiracy claims such as ANICO's directly

through the administrative process regardless of how they are dressed up.  Section

1821(d)(13)(D) is therefore a jurisdictional bar to ANICO's claims given its failure

to exhaust their administrative remedies.

Along the same lines, ANICO is wrong in its assertion that "several

other Circuits that have considered whether claims against third parties are subject

to FIRREA have concluded that such claims may proceed independently of the

receivership claims administration process."  (App. Br. at 21; *see* App. Br. at 21–

24.)  The cases ANICO cites do not consider application of FIRREA when a

plaintiff challenged the FDIC receiver's sale of assets to an assuming bank.

Indeed, in *Hoxeng* v. *Topeka Broadcomm, Inc.*, the court rejected an agent of the

FDIC's attempt to invoke FIRREA's jurisdictional bar because "Plaintiff . . . *made

no claim relating to an act or omission of the FDIC as receiver*."  911 F. Supp.

1323, 1338 (D. Kan. 1996).  Likewise, *Bank of New York* v. *First Millennium* did

not involve claims against an assuming bank arising out of its purchase of assets

from the FDIC, nor did it involve a challenge to or otherwise implicate the FDIC's

-30-

conduct as receiver, but instead involved competing ownership claims to the trust assets of a failed bank, an issue not presented here.  607 F.3d 905, 910 (2d Cir. 2010).  Similarly, *Henrichs* v. *Valley View Development* stands only for the proposition that FIRREA does not automatically apply simply because a claim concerns an asset that was once held by the FDIC as receiver, when the claim does not relate to the acts of the FDIC receiver (unlike this case, which is a challenge of the receivership sale itself).  474 F.3d 609 (9th Cir. 2007).[6]

---

[6]    The cases in Appellants' string cite (App. Br. at 21–22) also provide no support for the appeal.  *First*, *Rosa* v. *RTC* never held that a "lawsuit against [a] purchaser of assets from FDIC [was] not subject to FIRREA's jurisdictional bar." (App. Br. at 21.)  Rather, *Rosa* used a broad reading of clause (i) of subsection (d)(13)(D) to hold that the jurisdictional bar did apply "because any recovery against those entities will be satisfied, if at all, from the assets of [the failed bank]," and therefore the court did not reach the RTC's alternative "argument that those claims are also barred under clause (ii)" of subsection (d)(13)(D).  938 F.2d 383, 393–94 (3d Cir. 1991).  *Second*, *Hudson United Bank* did not reach the scope of the jurisdictional bar, but rather affirmed the transfer of the entire case—*including the claims against the third party purchaser*—under FIRREA's venue provision and held that FIRREA's "administrative claims procedures and the jurisdictional bar have concurrent scope."  43 F.3d at 849.  *Third*, *FDIC* v. *McFarland* simply held that Louisiana reinscription law applies to mortgages held by an assignee of the mortgage from the FDIC, and that the assignee could not use FIRREA offensively to elevate his security interest in the underlying property above two senior security interests.  243 F.3d 876, 885–87 (5th Cir. 2001).  *Fourth*, the three Northern District of Texas cases cannot support Appellants' proclamation that "FIRREA does not apply to suit against acquirer of assets from FDIC" (App. Br. at 22) because these cases did not even mention or consider the applicability of FIRREA.  *Team Bank* v. *Barfield*, 145 F.R.D. 69 (N.D. Tex. 1992); *Bank One, Tex., N.A.* v. *Elms*, 764 F. Supp. 85 (N.D. Tex. 1991); *Hickey* v. *NCNB Tex. Nat'l Bank*, 763 F. Supp. 896 (N.D. Tex. 1991).

### 2.     ANICO Failed to Comply With FIRREA's Exhaustion Requirement.

ANICO's assertion that "[t]he District Court has had no occasion to determine the sufficiency of Appellants' proofs of claims filed with the FDIC-Receiver with respect to claims asserted against JPMC" (App. Br. at 15 n.34) is also wrong.  The District Court had the ability to make this determination.  In fact, the District Court noted that it was not "limited to the allegations contained in the complaint" in determining subject matter jurisdiction over the claim because "the court may consider materials outside the pleadings."  (JA-327 (citations omitted).)  It was based on all the evidence presented that the District Court properly concluded that ANICO "failed to invoke and exhaust [FIRREA's] administrative process."  (JA-329.)

That evidence was ANICO's carefully crafted statement that ANICO purportedly "did in fact file a proof of claim with the FDIC-Receiver" (App. Br. at 14–15 n.34)—relying on a lawyer's declaration that does not attach the actual proof of claim (*see* JA-222 ¶ 2).  This falls short of the requirements of FIRREA.  ANICO does not contend that the proof of claims it filed satisfied FIRREA's exhaustion requirement concerning the claims asserted *in this action*—and for good reason.  A proof of claim on WMB's bond obligations to ANICO or for some other undisclosed claim does not satisfy FIRREA's exhaustion requirement.  A

valid proof of claim must apprise the FDIC of the *specific* allegations that the

potential plaintiff seeks to assert.  *See*, *e.g.*, *Ravenswood, LLC* v. *FDIC*, No. 10-cv-

01064, 2010 U.S. Dist. LEXIS 124248, at *10 (N.D. Ill. Nov. 23, 2010) ("Because

Ravenswood failed to provide the factual basis for its damages claim to the FDIC,

it did not adequately exhaust FIRREA's mandatory administrative review

process."); *McGlothlin* v. *RTC*, 913 F. Supp. 15, 18 (D.D.C. 1996) (rejecting new

claims where "plaintiffs have not submitted any claims to the RTC based on

negligence or breach of contract, nor have they submitted claims for the amount of

damages they seek in this Court"), *aff'd*, 111 F.3d 963 (D.C. Cir. 1997); *Aljaf*

*Assocs.* v. *FDIC*, 879 F. Supp. 515, 518 (E.D. Pa. 1995) ("claim of fraud is

separate and distinct from a claim of breach of contract" and therefore "plaintiff

failed to comply with the procedures mandated by § 1821(d)").  Surely, if such a

proof of claim existed, ANICO would have produced it during the District Court

proceedings.  The District Court was right in concluding that an unproduced proof

of claim that does not purport to apprise the FDIC that ANICO believed it had a

basis to sue JPMC (or the FDIC or anyone else) relating to the FDIC's sale of

WMB's assets to JPMC Bank and some hypothetical government conspiracy fails

to satisfy FIRREA so as to preserve the claims in this lawsuit.

### 3.     ANICO Cannot Avoid FIRREA By Blaming the FDIC.

ANICO also argues that the District Court's holding that it "failed to invoke and exhaust [FIRREA's] administrative process" (JA-329) should be reversed because the FDIC is to blame for its failure to give the requisite notice. (App. Br. at 34–37.)  ANICO asserts it was "specifically instructed by the FDIC-Receiver to 'disregard this notice' with regard to any claim not against WMB, including presumably claims against JPMC" because of language in the FDIC's notice to creditors that:  "If, in fact, you do not have a claim against the Failed Institution, please disregard this notice."  (App. Br. at 35–36 (quoting JA-233–JA-234).)

Generally, "[e]ven if [Appellants] never received the required notice . . . they were still obliged to exhaust their administrative remedies as a condition of obtaining access to the district court" and "by failing to do so, deprived the court of jurisdiction."  *Freeman*, 56 F.3d at 1402; *see also In re Shirk*, 437 B.R. 592, 603–604 (Bankr. S.D. Ohio 2010) ("courts have held time and time again that the FDIC's failure to mail notice . . . does not relieve claimants from exhausting their administrative remedies as a condition to seeking relief in courts").[7]  More

---

[7]     ANICO's reliance (App. Br. at 35) on two sentences quoted out of context from a 2007 FDIC brief in opposition to a petition for certiorari in *Henrichs* v. *Valley View Development* does not excuse its non-compliance with FIRREA.  As

-34-

specifically, the assertion that the FDIC sent conflicting messages regarding the
administrative process does not excuse ANICO from complying with FIRREA.
*See Anderson* v. *FDIC*, No. 08-cv-2306, 2010 U.S. Dist. LEXIS 30569, at *4–5
(S.D. Cal. Mar. 30, 2010) (holding that even if plaintiff "relied to his detriment on
the FDIC's attorney's assurances" that does not excuse compliance with
FIRREA's exhaustion requirement); *Walker* v. *FDIC*, No. 08-6037, 2009 U.S.
Dist. LEXIS 121076, at *25–29 (D.N.J. Dec. 29, 2009) (rejecting argument that
"FDIC seemingly contradicted its rationale for disallowing Plaintiffs' proof of
claim" because "[u]nfortunately for Plaintiffs, the failure to file a timely claim and
therefore, exhaust the administrative claims review process is fatal to Plaintiffs'
claims").  In fact, "the *only* statutorily-specified exemption from the strict
requirements of the administrative claims process is . . . if 'the claimant did not
receive *notice of the appointment of the receiver* in time to file . . . [a] claim.'"
*Freeman*, 56 F.3d at 1402 (quoting 12 U.S.C. § 1821(d)(5)(C) (emphasis in
*Freeman*).  Here, if ANICO submitted an insufficient proof of claim, ANICO was
demonstrably aware of the receivership and the receivership claims process.  (*See*,

---

discussed in the Brief of Defendant-Appellee FDIC-Receiver, the FDIC's brief in
*Henrichs* stands for the proposition that a petitioner cannot invoke FIRREA's
jurisdictional bar offensively to undo a prior state court judgment—which resolved
ownership claims to assets acquired out of receivership several years earlier—
simply because the asset "was formerly [almost a decade earlier] held by an FDIC
receivership."  (JA-129–JA-147 at JA-140.)

*e.g.*, JA-222 ¶ 2.)  For these reasons, ANICO's excuses for non-compliance with

FIRREA's exhaustion requirement have no basis and the District Court's decision

should be affirmed.

### 4.    No Due Process Issues Exist.

ANICO lastly contends that "[a]pplication of FIRREA . . . would

violate Appellants' rights under the Due Process Clause of the Fifth Amendment of

the U.S. Constitution."  (App. Br. at 28; *see* App. Br. at 27–29.)  In its view, "if

FIRREA's jurisdictional bar applied to Appellants' claims against JPMC, then

judicial review would be wholly precluded."  (App. Br. at 27.)

This purported "due process" argument has been uniformly rejected,

including by this Court.  FIRREA's jurisdictional bar is an exhaustion requirement

that requires claimants to comply with a statutorily proscribed administrative

claims process.  There are no due process concerns raised by such a

Congressionally-mandated process because plaintiffs are given "an opportunity to

present their claims to the FDIC, and to have all those claims resolved through the

administrative claims process prior to foreclosure, subject to *de novo* judicial

review."  *Freeman*, 56 F.3d at 1403; *see also Rosa*, 938 F.2d at 391–92.  ANICO's

due process argument thus falls flat because it was not unconstitutionally deprived

of access to the courts.  On the contrary, it is due to ANICO's election not to

comply with FIRREA that it has "no further rights (and thus no right to a hearing

in this court) with regard to the claims." *Freeman*, 56 F.3d at 1403; *see also*

*Bueford* v. *RTC*, 991 F.2d 481, 486 (8th Cir. 1993).

## II.    ANICO'S "STANDING" ARGUMENTS ARE IRRELEVANT.

ANICO also raise two issues of "standing"—whether the FDIC owns

the claims at issue and whether "Appellants have standing to sue JPMC for their

injuries" (App. Br. at 37).  These arguments ignore the District Court's opinion,

which dismissed the action on jurisdictional grounds without reaching these issues.

Should this Court nonetheless consider these extraneous arguments, the District

Court's rulings should be affirmed because (a) it is the FDIC, on behalf of WMB's

receivership, that owns and controls ANICO's claims for generalized harm

purportedly suffered by all WMB bondholders, which provides another basis to

dismiss this action; and (b) the "lacked standing" argument is irrelevant because it

seeks to challenge a ruling the District Court never made and, at best, is a flawed

challenge to the District Court's proper conclusion that the "FDIC-Receiver is a

necessary party because Plaintiffs' injuries depend on the independent intervening

sale by the FDIC-Receiver" (JA-328).

### A.    ANICO's Claims Fail for the Additional Reason that the FDIC Owns Its Claims.

ANICO argues for reversal because the FDIC does not have the "right

to pursue or preclude claims owned by creditors of a depository institution."  (App.

Br. at 30; *see* App. Br. at 29–34.)  Although this is not a basis to challenge the

District Court's jurisdictional ruling (which did not consider this issue), it presents

a separate basis on which dismissal of this action should be affirmed.[8]

The FDIC as "receiver, and by operation of law, succeeds to all rights,

titles, powers, and privileges of the insured depository institution, and of any

stockholder, member, accountholder, depositor, officer, or director of such

institution with respect to the institution and the assets of the institution."  12

U.S.C. § 1821(d)(2)(A)(i).[9]  Pursuant to these powers, "the FDIC as receiver 'steps

into the shoes' of the failed [bank]" and, in that capacity, "marshals assets of failed

institutions for the benefit of its creditors [pursuant to] 12 U.S.C. § 1821(d)."

---

[8]    The FDIC asserted that under Section 1821(d)(2)(A) of FIRREA only the
FDIC could bring ANICO's claims because its alleged harm was suffered by
WMB and indirectly by all WMB bondholders alike.  This issue was fully briefed
below.  (*See* Docket Nos. 109–115.)  Appellants have affirmatively placed Section
1821(d)(2)(A) at issue on appeal, and this Court can affirm dismissal on this basis
alone.  *See Pharm. Care Mgmt. Ass'n* v. *District of Columbia*, 613 F.3d 179, 189
(D.C. Cir. 2010) ("because we review the district court's judgment, not its
reasoning, we may affirm on any ground properly raised").

[9]    Appellants emphasize that FIRREA's legislative history included a separate
provision that would have given the FDIC absolute priority over "shareholders,
depositors and creditors" in claims that both the FDIC and the private party had
asserted, but that provision was not included in the final version of the legislation.
(*See* App. Br. at 31–32.)  That the FDIC was not given absolute priority over
competing *direct* claims by individual shareholders, depositors and creditors sheds
no light on whether claims for *generalized harm to a failed bank* (and indirectly to
the particular creditors at issue) may only be brought by the FDIC.

*United States ex rel. RTC* v. *Schroeder*, 86 F.3d 114, 117 (8th Cir. 1996) (quoting

*O'Melveny & Myers* v. *FDIC*, 512 U.S. 79, 86 (1994)).[10]

    Courts therefore hold that only the FDIC may bring claims by

depositors or shareholders for generalized harm to the failed bank.  "[A]ny remedy

for [claims] that affects, or potentially affects, all creditors belongs to the receiver,

who asserts such claims for the benefit of all creditors."  *Downriver Cmty. Fed.*

*Credit Union* v. *Penn Square Bank*, 879 F.2d 754, 764–65 (10th Cir. 1989)

(dismissing depositors' claims); *see also Pareto* v. *FDIC*, 139 F.3d 696, 700–01

(9th Cir. 1998) (dismissing shareholder derivative suit against FDIC directors of

failed bank); *Hamid* v. *Price Waterhouse*, 51 F.3d 1411, 1420–21 (9th Cir. 1995)

(dismissing depositor claims against individuals and firms relating to bank

failures); *Courtney* v. *Halleran*, No. 02-C-6926, 2004 U.S. Dist. LEXIS 18795, at

*14–15 (N.D. Ill. Sept. 14, 2004) (dismissing depositors' claims because the

"injuries alleged . . . are indistinguishable from those suffered by [the bank's] other

depositors" and therefore claims "must be brought by the FDIC on depositors'

---

[10]    Appellants' reliance on the *O'Melveny* decision's discussion of the doctrine of "*inclusio unius, exclusio alterius*" (App. Br. at 30) is unavailing because, although the FDIC did not inherit the individual, direct rights of creditors, the FDIC possesses the power to bring claims for the benefit of the entire WMB receivership, such as the claims asserted here for harm suffered by all WMB bondholders whose liabilities were not passed to JPMC Bank (*see* JA-052–JA-054 (Compl. ¶¶ 67, 71)).

behalf"), *aff'd in relevant part*, 485 F.3d 942, 950 (7th Cir. 2007).  Courts have

similarly held that, while creditors can pursue claims for unique, individualized

harm in accordance with Section 1821(d)(2)(A), creditors (including debtholders,

such as ANICO) cannot pursue claims for alleged harm that was equally suffered

by the failed bank and its other creditors.  For example, the court in *Brazlin* v.

*Western Savings & Loan Association* dismissed subordinated debtholders' claims

against the failed bank's directors, auditor, and agents for, *inter alia*, wasting and

dissipating the failed bank's assets because "the injury to the noteholders as

creditors was not separate and distinct from the injury to Western or to Western's

other creditors," and thus those claims "belong to the RTC as Western's successor

in interest."  No. Civ. 91-0078, 1994 U.S. Dist. LEXIS 21549, at *20–24 (D. Ariz.

Jan. 26, 1994).

      Although ANICO relies on *Greenfield* v. *Shuck* as "instructive" on

this issue (App. Br. at 33–34), that court's analysis further demonstrates why it

cannot pursue its claims here.  In *Greenfield*, subordinated debtholders in a failed

bank sued the bank's directors and officers for causing the bank's failure and their

notes to lose their value.  867 F. Supp. 62 (D. Mass. 1994).  The court permitted

the debtholders' claims to proceed only after finding that the "injuries suffered by

these plaintiffs are sufficiently distinct from any injury to the corporation as a

whole" because "plaintiffs have alleged that numerous personal assurances were

given to induce them to withdraw funds from deposit accounts to purchase the

[notes]." *Id.* at 67.  Here, by contrast, ANICO's claims are not based on personal

assurances from, or direct contact with, JPMC to allege an injury distinct from that

suffered by WMB and all other creditors.  To the contrary, ANICO's alleged harm

is identical to the harm suffered by all other WMB bondholders because it is

predicated on the alleged "fire sale" of WMB's assets to JPMC Bank.  (JA-037

(Compl. ¶ 21).)  These claims seeking recovery for generalized harm suffered by

all WMB bondholders can be brought only by the FDIC.

### B.    The District Court Did Not Rule that ANICO Lacked Standing.

ANICO also asserts that the District Court wrongly "concluded that

Appellants lacked standing to sue JPMC because Appellants' injuries were not

'fairly traceable' to JPMC's action."  (App. Br. at 15 (quoting JA-328); *see* App.

Br. at 37–43.)  This argument is a red herring.  The District Court never reached

such a conclusion and, indeed, neither JPMC nor the FDIC argued in the District

Court that Plaintiffs' standing depended on whether their alleged injuries were

fairly traceable to JPMC's conduct.  For this reason alone, ANICO's argument can

be rejected.  *Blackmon-Malloy* v. *U.S. Capitol Police Bd.*, 575 F.3d 699, 707 (D.C.

Cir. 2009) ("[A]bsent exceptional circumstances, this court will not entertain

arguments not made in the district court," unless "the district court nevertheless

addressed the merits of the issue.").

-41-

Nonetheless, to the extent this Court examines ANICO's argument about the District Court application of Article III's "fairly traceable" requirement, it simply goes to whether the FDIC is a proper party.[11] The District Court concluded that the FDIC was a necessary party under Rule 19 because Plaintiffs' injuries depended on the FDIC's actions. In reaching this conclusion, the District Court relied on this Court's holding in *Fulani* v. *Brady* that "an injury will not be 'fairly traceable' to the defendant's challenged conduct nor 'redressable' where the injury depends not only on that conduct, but on independent intervening or additional causal factors." (JA-328 (quoting *Fulani* v. *Brady*, 935 F.2d 1324, 1329 (D.C. Cir. 1991) (quoting *Simon* v. *E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976))).)

The District Court's analysis was correct. Although ANICO seeks to dilute the importance of the FDIC's actions by describing them as "the last step in a chain of events that was initiated by JPMC" (App. Br. at 42), the FDIC's actions as receiver were independent, intervening acts. It was the FDIC, and solely the

---

[11] Appellants only state in a footnote that they "dispute the FDIC-Receiver's intervention." (App. Br. at 1 n.1.) Appellants therefore failed to preserve their ability to challenge the FDIC's intervention because an "argument [that] is found in a single footnote in [Appellants'] opening brief . . . is not enough to raise an issue for our review." *NSTAR Elec. & Gas Corp.* v. *FERC*, 481 F.3d 794 (D.C. Cir. 2007); *see also Am. Wildlands* v. *Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008) (noting that this Court has "consistently rejected" arguments in "a cursory remark in a footnote"). In any event, the FDIC's intervention was proper.

FDIC, that had the federally mandated power to sell WMB's assets for the alleged "fire sale" price. *See* 12 U.S.C. § 1821(c)(2) (authorizing FDIC to act as receiver); 12 U.S.C. § 1821(d)(2)(G) (authorizing FDIC to "transfer any asset or liability of the institution"). JPMC could not force the FDIC receiver to sell a pencil, let alone all the assets of WMB. Likewise, JPMC could not force the FDIC as receiver to accept the alleged "fire sale price" for WMB's assets. These are all independent actions of the FDIC.

In any event, even if the FDIC were not a necessary party, it was entitled to intervene as a matter of right under Rule 24(a)[12] and met the requirements for permissive intervention.[13]

---

[12]     The first and fourth requirements for intervention of right are met because the FDIC timely intervened and, as a federal agency with unique public obligations, the FDIC is not adequately represented by a private party. *See*, *e.g.*, *Fund for Animals, Inc.* v. *Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). The second and third requirements for intervention as of right are satisfied because the FDIC is entitled to intervene in matters (a) challenging FIRREA's application, *see Heaton* v. *Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 424–25 (5th Cir. 2002); *Franklin Sav. Ass'n* v. *OTS*, 130 F.R.D. 460, 461 (D. Kan. 1990); (b) challenging a purchase and assumption agreement to which it is a party, *see Arends* v. *Eurobank & Trust Co.*, 146 F.R.D. 42, 48–49 (D.P.R. 1993); and (c) potentially implicating its indemnity obligations to JPMC Bank, *see First Gibraltar Bank, FSB* v. *Bradley*, 98 F.3d 1338, 1996 WL 556852, at *4 & n.9 (5th Cir. 1996); *Pernie Bailey Drilling Co.* v. *FDIC*, 905 F.2d 78, 80 (5th Cir. 1990); *see also* (JA-180 (P&A Agreement § 12.1(a)(9)); JA-148–JA-149; JA-196–JA-197).

[13]     The FDIC met the requirements for permissive intervention because (a) JPMC's defense is based on a statute administered by the FDIC, *see* Fed. R. Civ. P. 24(b)(2), and (b) ANICO's claims challenge the FDIC's sale of assets pursuant to

### III.   THE DISTRICT COURT PROPERLY DENIED PLAINTIFFS' MOTION TO ALTER OR AMEND THE JUDGMENT AND REQUEST FOR LEAVE TO AMEND.

The District Court's Order denying ANICO's Rule 59(e) motion to alter or amend and Rule 15(a) request for leave to file an amended complaint should also be affirmed.  ANICO's Rule 59(e) motion failed to meet the stringent standards that apply to such a motion, and Appellants have failed to demonstrate that the District Court's denial of that motion was an abuse of discretion under the deferential standard of review that applies here.  Once the District Court reached this conclusion, it also correctly rejected the request for leave to amend after final judgment as moot.  *Ciralsky* v. *CIA*, 355 F.3d 661, 673 (D.C. Cir. 2004).  Indeed, even if the more liberal standard of Rule 15(a) *did* apply, ANICO's request for leave to amend would have been correctly denied as futile.

### A.   ANICO's Motion to Alter or Amend Had No Merit.

"A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Fox* v. *Am. Airlines, Inc.*, 389 F.3d 1291, 1296 (D.C. Cir. 2004) (quotation and citation omitted); *see also Agrocomplect, AD* v. *Republic of Iraq,*

---

the Federal Deposit Insurance Act and the P&A Agreement and a "governmental . . . agency" is permitted to intervene when the claim is based on an "agreement issued or made under the statute," Fed. R. Civ. P. 24(b)(2).

262 F.R.D. 18, 21 (D.D.C. 2009) (Rule 59(e) motions "are disfavored and should be granted only under extraordinary circumstances").  Below, ANICO failed to identify any clear error, present any previously unavailable evidence or demonstrate manifest injustice.  Therefore, the District Court properly denied its motion as an improper attempt "'to reargue facts and theories upon which a court has already ruled.'"  (JA-362 (citation omitted).)

On appeal, ANICO again fails to articulate any basis to support its Rule 59(e) motion, let alone demonstrate that the District Court's denial of the motion was an abuse of its discretion.  *See Messina* v. *Krakower*, 439 F.3d 755, 759 (D.C. Cir. 2006).  Rather, ANICO repeats its general argument that "even if JPMC's and the FDIC-Receiver's FIRREA and intervening cause arguments were *fully accepted*, the FDIC-Receiver's sale of assets to JPMC could not *possibly* bar claims arising from JPMC's misconduct that caused Appellants injury before the FDIC-Receiver came into existence."  (App. Br. at 46 (emphasis in original); *see* App. Br. at 46–48.)  This is not a basis for extraordinary Rule 59(e) relief.  The District Court carefully analyzed the allegations of pre-receivership misconduct, including that throughout 2008 JPMC allegedly "engineered a campaign involving adverse media 'leaks,' stock sales, and deposit withdrawals" and "disclosed Washington Mutual Bank's confidential information as it saw fit to news media, government regulators, and investors . . . ."  (JA-324–JA-325 (citing Compl. ¶¶ 46,

58).)  The District Court properly held that the pre-receivership allegations did not save the Complaint, which remained premised on the "harm caused by the FDIC-Receiver when it 'sold the crown jewels' of Washington Mutual Bank to JPMorgan Chase for a 'fire sale price.'"  (JA-327 (quoting Compl. ¶ 21).)

The key case on which ANICO relies does not change this result. ANICO interprets *Firestone* v. *Firestone* to require the District Court to "state why the original dismissal had been entered *with prejudice*" in a manner that was purportedly not done.  (App. Br. at 47 (emphasis in original).)  In *Firestone*, this Court noted that "outright refusal to grant the leave [under Rule 15(a)] without any justifying reason . . . is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."  76 F.3d 1205, 1209 (D.C. Cir. 1996) (*per curiam*). That does not mean in circumstances such as this, where the lower court's reasoning is concise and correct, that the Rule 59(e) decision must be overturned. To the contrary, when reviewing an "order denying the 59(e) and 15(a) motions, the validity of the latter rests partly on the propriety of the first," and therefore only *after* "conclud[ing] that the denial of the 59(e) motion was an abuse of discretion" did this Court in *Firestone* address whether the district court's denial of the Rule 15(a) motion should be reversed.  *Id*. at 1208–09.  Here, for the reasons discussed above, the denial of the Rule 59(e) motion was correct.  There is nothing

insufficient about the District Court's order on this motion that establishes an abuse of discretion.

**B.    ANICO's Rule 15(a) Request for Leave to Amend Was Properly Denied as Moot.**

Once the District Court correctly held that Plaintiffs failed to satisfy Rule 59(e)'s stringent standard, denial of ANICO's request for leave to amend was required.  Under this Court's precedent, "Rule 15(a)'s liberal standard for granting leave to amend governs once the court has vacated the judgment.  But to vacate the judgment, Appellants must first satisfy Rule 59(e)'s more stringent standard." *Firestone*, 76 F.3d at 1208.  Therefore, the District Court found that "a party must first hurdle this Rule 59(e) bar before amending a complaint, post-judgment" and because "Plaintiff has not done so, its motion to amend its complaint will also be denied."  (JA-363 (citation omitted).)[14]  Given these circumstances, ANICO has

---

[14]    Appellants' note that they "specifically requested as alternative relief that they be granted leave to amend their initial pleading" does not fix their problem. (App. Br. at 45 n.51 (citing Docket No. 95 at 34; Docket No. 96 at 38 (same).) Plaintiffs decided not to move for leave to amend in accordance with D.C. District Court Local Rule 7.1 before final judgment.  A "bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)."  *United States ex rel. Williams* v. *Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004); *see also City of Harper Woods Employees' Ret. Sys.* v. *Olver*, 589 F.3d 1292, 1304 (D.C. Cir. 2009) (affirming dismissal with prejudice because a "brief request for leave to amend if the District Court were to dismiss any of its claims" was not a motion "for leave to amend in the District Court").

not established that the District Court abused its discretion, and the District Court ruling should be affirmed.  *See Ciralsky*, 355 F.3d at 673.

### C.  Even Under the Standards of Rule 15(a), ANICO's Request for Leave to Amend Would Have Been Futile.

Although the District Court properly declined to consider the proposed amended complaint due to ANICO's inability to meet the requirements of Rule 59(e), the allegations included therein independently demonstrate that the request for leave to amend was futile.  In fact, the District Court's decision to dismiss the action with prejudice was the only possible result in light of Plaintiffs' continued reliance on the FDIC's conduct as WMB's receiver.

A "district court has discretion to deny a [Rule 15(a)] motion to amend on grounds of futility where the proposed pleading would not survive a motion to dismiss," which is the case here.  *Nat'l Wrestling Coaches Ass'n* v. *Dep't of Educ.*, 366 F.3d 930, 945 (D.C. Cir. 2004).  Although the Proposed Complaint pays lip service to the notion that the "claims aris[e] from JPMC's alleged private misconduct and damages occurring *before the FDIC even had been appointed as a receiver for WMB*" (App. Br. at 48 (emphasis in original)), the actual allegations demonstrate otherwise.  The Proposed Complaint excised the phrase "fire sale" and amplified the pre-receivership allegations, but the three

claims are essentially unchanged and continue to relate to the FDIC's sale of WMB's assets to JPMC Bank.  They thus are barred by FIRREA:

- The proposed amended tortious interference claim continues to be predicated on the theory that JPMC "induc[ed] WMB to breach the contracts," when on September 25, 2008 "WMB was seized by regulatory authorities and has failed and refused to meet its obligations under the Bond contracts."  (JA-357 (Proposed Compl. ¶ 93).)  Accordingly, exactly like the original Complaint, ANICO premises this claim on the "regulatory seizure of WMB [and] . . . a below-market [sale] price under terms that would sever the Plaintiffs' contractual rights under the WMB bonds."  (JA-357 (Proposed Compl. ¶ 94).)

- The proposed amended breach of confidentiality agreement claim alleges that JPMC & Co.'s "breach caused the Plaintiffs' injury by preventing Washington Mutual from obtaining a purchaser for itself or improving its financial health enough so that it could weather the market turmoil.  As a result, the value of Plaintiffs' WMB bonds has been substantially harmed."  (JA-359 (Proposed Compl. ¶¶ 104–05).)  This is simply a variation on the original claim that JPMC & Co.'s breach of the

confidentiality agreement caused the FDIC's sale of WMB's assets to JPMC

Bank for too low a price.[15]

- The proposed amended claim for unjust enrichment does not even

attempt to avoid the District Court's holding that claims relating to the

FDIC's sale of WMB's assets to JPMC Bank are governed by FIRREA, and

instead copies verbatim the allegations made in the original Complaint.

(*Compare* JA-359–JA-360 (Proposed Compl. ¶¶ 107–109), *with* JA-062

(Compl. ¶¶ 101–103).)  The claim alleges (again) that JPMC Bank "received

a benefit from its transaction with the FDIC whereby it obtained the valuable

assets of WMB at a price less than its fair market value."  (JA-359 (Proposed

Compl. ¶ 107).)

In sum, the proposed amended claims are futile.  Each of the three

claims and related damages theories relies on the FDIC's "sale of WMB's valuable

assets [to] create a default and totally prevent WMB from otherwise being able to

perform [its] obligations under the contracts."  (JA-353 (Proposed Compl. ¶ 80).)

---

[15]    Other bases also exist for dismissal of these claims.  For example, to the extent JPMC allegedly disclosed information in connection with the offer to acquire WMB's assets from the FDIC, the proposed breach of confidentiality claim is also prohibited by the Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343, 122 Stat. 3765 (2008).  "[I]n connection with any transaction in which the [FDIC] exercises its authority under . . . 12 U.S.C. § 1821," no court can "impose any liability" on JPMC based on a "confidentiality . . . agreement," as "such . . . liability shall be contrary to public policy."  12 U.S.C. § 1823(c)(11).

Therefore, each claim is barred by FIRREA. "Because the proposed pleading would not survive a motion to dismiss . . . , the District Court did not abuse its discretion in denying as futile appellants' motion for leave to amend their complaint." *Nat'l Wrestling*, 366 F.3d at 945.

## CONCLUSION

For the foregoing reasons, the judgment of the District Court dismissing the case with prejudice should be affirmed.

Dated:  January 21, 2011

Respectfully submitted,

 /s/ Bruce E. Clark
Bruce E. Clark
Stacey R. Friedman
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000

*Counsel for Defendants-Appellees
JPMorgan Chase & Co. and
JPMorgan Chase Bank, National
Association*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R.

App. P. 32(a)(7)(B) because this brief contains 12,287 words, excluding the parts

of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Circuit Rule 32(a)(1).

2.      This brief complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)

because this brief has been prepared in a proportionally spaced typeface using

Microsoft Word 2007 in 14-point Times New Roman font.

Dated:  January 21, 2011

/s/ Stacey R. Friedman
Stacey R. Friedman

*Counsel for Defendants-Appellees
JPMorgan Chase & Co. and
JPMorgan Chase Bank, National
Association*

## CERTIFICATE OF SERVICE

I hereby certify that, on January 21, 2011, I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated:  January 21, 2011

/s/ Bruce E. Clark
Bruce E. Clark

*Counsel for Defendants-Appellees*
*JPMorgan Chase & Co. and*
*JPMorgan Chase Bank, National*
*Association*